SOUTH BOULDER & R. C. DITCH Co. v. MARFELL ET AL.

1. WHEN A CONTRACT BY DITCH COMPANY TO FURNISH WATER CONSTITUTES AN OPTION — EFFECT OF ITS FORFEITURE.— A contract by which a ditch company agrees to furnish a consumer with a certain amount of water "year after year, so long as [he] shall pay the annual rental therefor," is a mere option which may be terminated

by the consumer at the end of any year, but a forfeiture of the consideration, if any, advanced for the option follows the exercise of the election to terminate.

2. CAUSING INTERFERENCE OF COUNTY COMMISSIONERS AS TO ANNUAL RENTAL TERMINATES CONTRACT.— Causing the county commissioners to fix a rate for water from the company's ditch, and declining to pay more than such a rate, is a termination of such contract, though the contract itself is not returned or canceled.

3. CONSUMER'S STATUTORY RIGHTS NOT WAIVED BY FORFEITURE OF CONTRACT.— A provision in such contract that, upon failure to pay the annual rental, the consumer "forfeits and relinquishes all rights and claims whatsoever in and to the use of said water from said ditch," applies only to rights given by the contract, and does not waive the consumer's statutory right to obtain water from the company's ditch under an order of the county commissioners.

4. SIGNERS OF OPTION CONTRACTS, WHEN ENTITLED TO PRIVILEGES OF COUNTY COMMISSIONERS' ORDER.— A proviso in such order that it shall not affect existing contracts does not exclude from the privileges of the order consumers who have signed such option contracts, and then terminated them by applying for the order.

5. TO PROCURE ORDER FROM COUNTY COMMISSIONERS ALL CONSUMERS OF WATER NEED NOT JOIN IN THE APPLICATION.— Under the statutory provision allowing an application for such an order to be made by "any party or parties interested in procuring water," it is not necessary that all consumers using or seeking water from a particular ditch should join in the application.

6. SPECIAL WATER-RATES MAY CONTINUE NOTWITHSTANDING ORDER OF COUNTY COMMISSIONERS.— Though the commissioners, in pursuance of statute, may fix a water-rate, special contracts may be made with the carrier, or consumers may continue under pre-existing contracts.

7. WHO MAY PETITION COMMISSIONERS TO FIX WATER-RATES, AND TAKE ADVANTAGE THEREOF.— Parties desiring water from a canal who have never been consumers therefrom may petition the county commissioners to fix a rate for carriage, and take advantage thereof, if the carriage diversion be not exhausted.

## Appeal from District Court of Boulder County.

THIS cause was tried on an agreed statement of facts. Appellees, including Mitchell, were consumers of water from appellant's ditch. Mitchell made with appellant the following instrument of writing: "State of Colorado, County of

Boulder — ss.: This agreement, made and entered into this 5th day of June, 1886, by and between the South Boulder and Rock Creek Ditch Company, of the one part, and Joseph Mitchell, of the other part, witnesseth: That the said company, for and in consideration of the sum of $1, to it paid by the said Joseph Mitchell, the receipt of which is hereby acknowledged, and for the additional annual rental of $150, to be paid by the said Joseph Mitchell, agrees that, after reserving for its own special use one thousand inches of water out of the amount decreed it, to furnish to the said Joseph Mitchell, out of the overplus to which it is entitled by virtue of said decree, one hundred inches of water, according to the company's system of measurement (provided always there is sufficient water in South Boulder creek to furnish the same according to the decree rendered and priorities of ditches taking water therefrom), upon the following conditions: The company is to keep the ditch in good repair, and of sufficient dimensions to carry the amount of water decreed it, and to furnish to said Joseph Mitchell the said one hundred inches of water year after year, for and during the irrigation season of each and every year, so long as the said Joseph Mitchell shall pay the said annual rental therefor.

"And it is expressly agreed to, by and between the parties hereto, that the said Joseph Mitchell purchases and takes said interest in and to said water according and subject to the customs of consumers of water from said ditch; and that, in the event of his failure to get his full quota of water, or any part thereof, as aforesaid, by reason of a scarcity of water in said creek, and reservation of water by said company, and the respective interests of prior claimants, he will make no claim to or for a *pro rata* distribution of what water may be running in said ditch at such time, but will concede to all claimants and consumers of water from said ditch prior to him in point of time the full amount of their respective claims (priorities to be numbered accord-

ing to dates of agreements, and such agreement to be exe-
cuted in duplicate).   And upon the failure of said Joseph
Mitchell to pay said annual rental as aforesaid, he will for-
feit and relinquish all rights and claims whatsoever both
against the said company and in or to the use of said water
from said ditch.

"In witness whereof the said parties have hereunto affixed
their names the day and date above written.   THE SOUTH
BOULDER AND ROCK CREEK DITCH COMPANY.   By A. C.
GOODHUE, its President.   JOSEPH MITCHELL.   Witness: MARY
E. MILLER, Sec'y."

The agreements made by the other appellees with appel-
lant are precisely similar in general terms to the foregoing,
and therefore it was deemed unnecessary to set them out in
the record.   Appellees received water for the year 1886,
paying therefor the amount specified in the writing; but in
January, 1887, they, with other land-owners under appel-
lant's ditch, petitioned the county commissioners, in accord-
ance with the statute in that behalf enacted, to establish an
annual rate of charges for the delivery of water from appel-
lant's ditch.   In pursuance of this petition the commission-
ers fixed such rate at $1 per cubic inch.   Appellees tendered
this amount for the year 1887, but appellant refused to ac-
cept less than $1.50 per inch, as provided in the alleged
agreement.   Appellees paid the sum thus demanded, taking
receipts, however, showing that fifty cents per inch thereof
was paid under protest, and providing for refunding the
same, if, in an agreed case to be brought, appellant's right
thereto should be judicially denied.   The present action
being prosecuted in accordance with the above stipulation,
judgment was duly rendered by the court below for the
amount thus claimed by appellees.

Mr. THOMAS R. OWEN, for appellant.

Messrs. RICHARD H. WHITELEY and RICHARD H. WHITE-
LEY, Jr., for appellees.

CHIEF JUSTICE HELM delivered the opinion of the court.

The determination of this controversy depends upon our construction of the instrument executed by the carrier (appellant) with its consumers. For present purposes it is only necessary to consider the following principal features of the writing in question: *First*, the affirmative promise by appellant to deliver to its consumer a certain quantity of water annually, upon the annual payment of the specified consideration therefor; and *second*, the nature and extent of the penalty affixed to the consumer's failure or omission to make this payment and receive the water.

It will be observed that, in consideration of the sum of $1, the receipt whereof is acknowledged, and the yearly payment of an " annual rental " of $150, appellant promises to deliver to its consumer named in the instrument before us, for use during each irrigating season, one hundred inches of water. This arrangement is to terminate at no particular time. It continues at the consumer's pleasure. There is no promise on his part to take the water for any specified period, or at all. If he declines to pay the price and exercise the right conferred, no liability attaches for even nominal damages, and no cause of action against him, as for breach of contract, accrues. The undertaking of the company is somewhat similar to the "options," so common in this state, for the purchase of land, the consideration for which is usually a cash forfeit paid in advance. The option in the present case, however, is unlike the options mentioned, in that it provides for a continuous series of transactions. As above suggested, it runs for as many years as the consumer pays the sum named and uses the water; it terminates whenever he fails or refuses to make the specified payment. The instrument provides substantially for a series of annual contracts. In legal effect it extends on behalf of appellant an annual proposition, which, when accepted by its consumer, becomes a contract for the current season.

It is apparent from the foregoing that, in our judgment, appellees might terminate the arrangement at will. And when, in January, 1887, they caused the county commissioners to fix a rate for the delivery of water from appellant's ditch, and declined to pay the price named in the writing, they unquestionably evinced their intention to waive the option and relinquish the privileges connected therewith. It would, perhaps, have been more courteous had they first delivered up to appellant the copy of the instrument in their possession, and given formal notice of their intention to depend in future upon the statutory adjudication; but appellant received due notice of the proceedings before the commissioners, and the action of appellees in the premises was a legal abandonment of all privileges theretofore enjoyed under the agreement.

We turn to the remaining feature, above mentioned, of the writing under consideration. The provision is that, upon a failure to pay the annual delivery charge specified, the consumer " forfeits and relinquishes all rights and claims whatsoever, both against the said company and in and to the use of said water from said ditch." We deem it unnecessary to consider in the present opinion the question of public policy argued in this connection by counsel for appellees. Whether appellees could, by contract, forever relinquish rights relating to water conferred upon them by the constitution and statutes we need not determine. The instrument itself, in our judgment, does not indicate any such intent. It contains no declaration that, upon a failure to accept the annual proposition, and make the annual contract, the consumer abandons all right to obtain, *in any manner*, water from the carrier's canal. In the absence of an express declaration or clear implication to the effect that such omission or failure should produce a forfeiture of constitutional and statutory rights existing, collateral to those provided for in the agreement, such collateral rights would, in any event, unquestionably remain undisturbed. The simple and obvious meaning of the provision is that the

"rights and claims" intended to be forfeited are those mentioned by the instrument itself, viz., the consideration advanced, and the privileges therein expressly enumerated. The "said water," the use of which is relinquished, is the one hundred inches specifically covered by the option. Under all the circumstances, the phraseology employed fairly admits of no other construction.

When the written instrument was executed, the statute authorizing, in pursuance of constitutional mandate, the fixing of a maximum rate by the county commissioners, embodied a proviso declaring that such action should not affect existing contracts between the carrier and consumer or the reciprocal rights and duties of the contracting parties. The order of the county commissioners appearing in the statement of facts before us contains a similar proviso. It is ably argued by counsel for appellant that these provisos apply to appellees, and that consequently appellees belong to a class expressly excepted from the statute, and from whom the privilege of invoking action by the county commissioners, or receiving the benefit of such action, is therefore expressly withheld. To the correctness of this construction we cannot subscribe. Our view is that the legislative proviso in question, and that of the commissioners as well, relate to existing, definite and valid contracts, binding upon both parties. They do not contemplate mere options, such as the one before us, nor compel the consumer, who is a party thereto, to make the yearly contracts provided for or give up all claim to water from that particular canal. To say that these options were included in the excepting clause adopted by the commissioners would be to charge them with stultifying their own action; the proviso would nullify the order, so far as appellees are concerned, and the commissioners would be convicted of the absurdity imputed to them by counsel. Such a view is not called for by the letter of either the statute or order, and a reasonable interpretation fairly excludes it from the spirit of both.

We shall not discuss separately and at length the remain-

ing specific objections presented on this appeal. In response thereto the following brief suggestions are deemed sufficient:

The inadequacy of the annual water-rate fixed by the county commissioners is a subject not properly before us at the present time. This action is simply to recover back the fifty cents per inch above such rate, paid by appellees under protest. The inadequacy of price does not appear to have been adjudicated in the court below; and, even could such matters be reviewed, a point upon which we here express no opinion, there is no *data* before us to furnish ground for the requisite examination.

The law does not require that all consumers using or seeking water from the same carrier shall join in the petition to have the commissioners establish a maximum rate. Such application may be made by " any party or parties interested in procuring water," etc. The failure, therefore, of senior consumers from appellant's ditch to unite with appellees in the petition is a matter of no legal significance. Nor does the action of the commissioners in pursuance of the statute prevent consumers from making special contracts with the carrier regarding the rate, or from continuing under agreements already existing.

If it be a fact that, by repudiation of the option, appellees forfeited the right to claim *as former users* from appellant's ditch, their attitude in invoking the decision of the county commissioners does not necessarily affect the questions now to be determined. For the statute permits parties having land under the carrier's canal, who have never previously been consumers therefrom, to petition for the establishment of a maximum water rate, and take advantage thereof, if the carrier's diversion be not exhausted.

In view of the foregoing discussion it is unnecessary to further answer the objection that the action of the board of county commissioners in fixing a rate for appellees impairs the obligation of a contract. Unless we have failed to ac-

complish our purpose, we have shown that the writing relied on constituted an option merely, and there was, properly speaking, no contract binding upon appellees to be violated.

The record does not apprise us that senior consumers from appellant's ditch suffered either actual or legal injury by the proceedings now presented for review. And it would be an unwarranted as well as an uncalled-for step on our part to discuss or determine questions based upon the assumption that such injuries *necessarily* resulted.

The judgment of the court below is affirmed.

*Affirmed.*