[Sac. No. 1642.   In Bank.—December 24, 1909.]

### B. H. LEAVITT, Respondent, v. LASSEN IRRIGATION COMPANY (a Corporation), Appellant.

APPROPRIATION OF WATERS FOR PUBLIC USE—PRIVATE APPROPRIATION BY
MEANS OF SAME DITCHES—RESERVATION OF PRIVATE RIGHTS IN SALE.
—One who has made an appropriation of waters for the public use
of sale, rental, and distribution, under the constitution of 1879,
may by means of the same canal and ditches make a private appro-
priation of waters for use upon his individual land, and upon a
subsequent sale of the water system may withhold from the sale the
waters so privately appropriated.

ID.—PUBLIC APPROPRIATOR CANNOT RESERVE WATER FOR PRIVATE USE.—
An appropriator of water for public use is but an instrumentality
for the distribution of the water to those entitled to its use, and upon
a sale by him of the water-rights so appropriated he has no power
to reserve to himself for his private purposes any part of such
water.

ID.—PRIVATE APPROPRIATION—MEASURE OF EXTENT OF RIGHT.—The right of an appropriator of water for private use upon his individual land, and his right to priority in the use of such water, is measured by the amount which he had been actually taking and applying to a beneficial use upon that land, and not by the amount which he took, nor by the amount which he claimed, nor by an amount sufficient to thoroughly and properly irrigate the land.

ID.—PREFERENTIAL RIGHT TO WATER APPROPRIATED FOR PUBLIC USE—CONSUMER CANNOT OBTAIN.—A public service water company which is appropriating water under the constitution of 1879, for purposes of rental, distribution, and sale, cannot confer upon a consumer any preferential right to the use of any part of its water. All are equally entitled to share in the use of the water who pay, or offer to pay, the legal rate and to abide by the reasonable rules and regulations of the company.

ID.—CONTRACT WITH CONSUMERS — BREACH BY CONSUMER — CONTINUED RIGHT TO WATER.—It does not follow that a water company may not make specific contracts with individual consumers which are within the purview of the constitution and within valid legislative enactments regulating the public use. Such a contract, even if violated by the consumer, could not operate to deprive him of his constitutional right to the water furnished by the public service corporation upon tender to it of the legal rate. For the breach of the consumer's contract, the water company must seek other redress than that of depriving the consumer of his share of the supply.

ID.—APPROPRIATOR MAY LIMIT TERRITORY TO BE SUPPLIED.—The rule that a water company, or person in charge of water devoted to public use cannot confer a preferential right upon one consumer over another, does not deny the right of such company or person in possession of a limited amount of water to devote that amount to the irrigation of a given area of land. The company may fix the limits of the territory to be supplied, and lawfully agree to supply its waters, first, to the lands within that territory, and to supply to outsiders only such surplus as there may be after the needs of the original territory for which the water was procured are satisfied. Such a restriction would not be in derogation of the public trust, but would be a mere regulation of the use in the performance of the trust.

ID.—APPORTIONMENT OF WATER AMONG CONSUMERS.—Consumers, having once been supplied by the company, are entitled to a continuation of such supply, unless their *quantum* shall be diminished by a shortage for which the water company is not responsible, or a shortage by reason of the increased demand of added consumers. In such cases, it is the duty of the water company to supply such water as it has, fairly apportioned between its consumers.

ID.—ATTEMPT BY STATUTE TO GIVE PREFERENTIAL RIGHT IS UNCONSTITUTIONAL.—Any attempt, by section 552 of the Civil Code, or by the provisions of the act of March 12, 1889, as amended by the act of March 2, 1897 (Stats. 1897, p. 49), to confer upon any particular

consumer any especial, permanent, and preferential right further than as above stated, is unconstitutional and void.

ID.—REFUSAL OF CONSUMER TO PAY FOR WATER—CLAIM OF PREFERENTIAL RIGHT TO USE WITHOUT CHARGE—BREACH OF CONTRACT.—The refusal of a consumer of water appropriated for public use, who claimed a permanent preferential right to the use thereof without charge, either to pay for the water at the rate fixed by law or by a contract with the company supplying the water, amounted to an intentional breach and repudiation of the contract, and justified the company in refusing further to supply him with water.

APPEAL from a judgment of the Superior Court of Lassen County and from an order refusing a new trial.   F. A. Kelley, Judge.

The facts are stated in the opinion of the court.

W. F. Williamson and H. D. Burroughs, for Appellant.

N. J. Barry, for Respondent.

HENSHAW, J.—Plaintiff's complaint contained two causes of action.   In the first he asserted his ownership of the Leavitt Buggytown Ranch, containing one thousand acres, and alleged that he was of right entitled to take, free of charge, sufficient water from defendant's canals and ditches to thoroughly and properly irrigate all of these lands.   He averred that defendant refused to allow him so to take the water in the irrigating season of 1905, and that by reason of this refusal his crops were seriously damaged.   The second cause of action sets forth a like claim to the free taking and use of water from defendant's ditches sufficient to thoroughly and properly irrigate another piece of land of one hundred and sixty acres, in the irrigating season of 1905; the defendant refused to allow plaintiff so to take the water, with the result that his crops were damaged.   In both causes of action he seeks compensation for this damage, and an adjudication of his rights to water for these lands.   The cause was tried without a jury, judgment passed for plaintiff, and from that judgment and from the court's order denying defendant's motion for a new trial it appeals.

1. Plaintiff's asserted right to the free use of water for his Buggytown Ranch rests upon the following facts:   In 1889

and the years following plaintiff constructed the Susan River irrigation system, by which he appropriated, for the purposes of sale, rental, and distribution, the surplus waters of Susan River, in Lassen County.    Plaintiff testifies that he appropriated these waters for the purposes of sale, rental, and distribution, and also for private use upon his Buggytown Ranch. The court finds that immediately after the construction of the system plaintiff appropriated and used from the waters of the system a sufficient quantity to irrigate this ranch.    Subsequently plaintiff sold his water system, but, in selling, reserved to himself "the prior and preferred right to take from said system a sufficient quantity of water to properly irrigate during the irrigating season of each and every year all of the lands comprising said Leavitt Buggytown Ranch."    After further findings to the effect that defendant acquired title to the system with full notice and knowledge of plaintiff's prior and preferred right, the court gave its judgment that "plaintiff has a prior and preferred right to take from said system, free of charge, during the irrigating season of each and every year, water in sufficient quantities to thoroughly and properly irrigate all of the lands comprising the said Leavitt Buggytown Ranch (describing it), and the defendant, its agents, attorneys and employees be and they are hereby perpetually enjoined from in any manner interfering with plaintiff's right to take from said system so much of the waters thereof as may be necessary to irrigate the said one thousand acres of land during the irrigating season of each and every year."

For respondent, the most favorable view which can be taken of the evidence is that he made an appropriation of waters for the public use of sale, rental, and distribution under the constitution of 1879; that by means of the same canal and ditches he made a private appropriation of waters for use upon his individual land, and that when he came to sell his irrigating system he withheld from the sale the waters so privately appropriated.    It cannot be said that there was anything illegal in these acts.    But when the rights of plaintiff come to be measured by the trial court, it is noticeable that he is given far more than the facts and the law warrant.    Treating Leavitt's appropriation as being wholly and entirely for public use he, the owner of the system, was but an instrumentality for the distribution of the waters which he gathered to such

members of the public as might apply for them and pay to him the legal charge for the service that he rendered. As the agent of such a public use, he had no power whatsoever to reserve to himself for his private purposes any part of this water. If he could reserve a part, he could reserve all, and thus, by his *ipse dixit,* convert a public use into private ownership, or, if he could reserve a part for himself, he could with equal authority give away parts of the supply to others, and by this method destroy what the constitution itself has declared shall forever remain a public use. Therefore, the only tenable ground upon which respondent can stand is that, with his appropriation for public use, he became a private appropriator of water for use upon his Buggytown Ranch. If this be so, then his rights to water would be measured as are the rights of every other private appropriator—not by the amount which he took, not by the amount which he claimed, not, as the court decrees, by an amount sufficient thoroughly and properly to irrigate a thousand acres of land; but it would be measured by the amount which he had been actually taking and applying to a beneficial use upon that land. His right to priority in the use of water would also be measured according to these facts and limited to this quantity. (*Senior* v. *Anderson,* 115 Cal. 496, [47 Pac. 454]; *Smith* v. *Hawkins,* 120 Cal. 86, [52 Pac. 139] *Strong* v. *Baldwin,* 137 Cal. 440, [70 Pac. 288].) The findings and judgment as above quoted establish that the court adopted the erroneous view that respondent, by his so-called reservation, had been able to secure for himself an undetermined quantity of water, without regard to the amount which he had been beneficially using. The findings and judgment are silent upon the question as to this latter amount, and the judgment upon this cause of action must, therefore, be reversed. This discussion has been upon the assumption that Leavitt did in fact make a private appropriation of water for use upon his Buggytown Ranch in connection with his appropriation of the waters of Susan River for public use. If, however, the facts should be that he did not make such private appropriation, his attempted reservation of a private right out of a public trust, as above stated, would be futile and void.

2. Respondent's second cause of action is based upon a breach of contract. One Purser came into the ownership of Leavitt's irrigation system. As Purser became the owner

subject to whatever force and effect attached to Leavitt's reservation of water for his Buggytown Ranch, it is to be remembered that all other waters were appropriated for the public use of sale, rental, and distribution, and that Purser stood simply as the agent of the public in the execution of this use.    Purser, while so the owner, made a contract with Grace Elledge, a daughter of plaintiff, who was at that time in possession of one hundred and sixty acres of land.    By this contract Purser agreed to supply Grace Elledge with sufficient water from the Susan River irrigation system for the annual irrigation of this land. Grace Elledge agreed to pay the sum of one dollar per acre annually "for each and every acre of land which may have been previously cleared of brush or cultivated."    It was further agreed that the water should be delivered by Purser at seasonable times and should be taken and used by Grace Elledge  in conformity to the lawful rules and regulations which Purser might make.    It was understood that Grace Elledge should have a priority of right to the use of water over and above all other consumers saving those who held contracts like her own.    The contract contained many other provisions, but as they touch matters foreign to this consideration it is not necessary to set them forth.    This contract between Purser and Grace Elledge was acknowledged upon February 15, 1896, and upon the same day there was indorsed thereon, but not acknowledged, the following: "For a valuable consideration I hereby assign the within agreement and all my rights thereunder to B. H. Leavitt, (signed) Edward T. Purser.   Grace E. Elledge."   Subsequently Grace Elledge made a deed of the one hundred and sixty acres of land to her father, Leavitt, granting therewith "all ditches, water and water-rights used thereunto or appurtenant thereto."    Upon this state of facts the court found that Leavitt was entitled to take from defendant's system, free of charge, "a sufficient quantity of water during the irrigating season of each and every year to properly and thoroughly irrigate" this one hundred and sixty acres, and that this right was a permanent right and prior and preferred over all other rights, saving the rights of those who had contracts with Purser of like effect.

Against this judgment appellant advances many propositions of gravity, not a few of which we consider valid.    Thus,

it argues that the judgment itself is void for uncertainty, in decreeing to respondent in general terms water sufficient to "thoroughly irrigate one hundred and sixty acres of land," without specifying the *quantum* of water, the kind of irrigation, or in any way the amount which might actually be needed. Again, it argues that the contract itself provided that Purser, the owner of the system, would supply water under the rules and regulations which he might make, while the decree entitles Leavitt to enter and take the water. It further argues and shows that the purported assignment to Leavitt was not acknowledged, so that no constructive notice came to appellant of the purported assignment, and that if, as respondent contends, Grace Elledge's rights were such as passed by her deed to her father, it could only be so upon the theory that an easement—an interest in land—had been created, and if such was the case, and as Purser had made a subsequent assignment of his rights under this very contract to a third person and it had been duly recorded, Leavitt's unrecorded assignment became void. (Civ. Code, sec. 1214; *Cady* v. *Purser*, 131 Cal. 552, [82 Am. St. Rep. 391, 63 Pac. 844].) Again, appellant argues, and with much force, that the effect of Purser's assignment of the contract to Leavitt, and of Grace Elledge's assignment of the contract to Leavitt, could not in law be the creation of a free right to water against the appellant; that Purser's assignment carried the right to collect tolls at the rate of a dollar per acre for the water supplied, but carried also the duty of supplying the water; that Grace Elledge's right was to receive water upon the payment of a dollar per acre; that the conveyance into a single person of all of both parties' rights and duties under such a contract could result in nothing but a merger of these rights and duties and an extinguishment of the contract, since no man can contract with himself and no man can be compelled to furnish water to himself and pay himself therefor a dollar per acre for so doing. These, and many other objections are advanced against this judgment, with much force and learning. But the paramount question renders unnecessary their consideration and determination. That question may be thus stated: Waiving all minor objections, had Purser the power so to burden his public trust with this perpetual private right? Purser, it is to be remembered, held all of these waters as an

appropriator for sale, rental, and distribution under the constitution of 1879. He was but the purveyor of this public use, the agent in the execution of this public trust. If, by any method however devious, there can be carved out of this public trust such a private right, it must obviously result in the destruction of the public use itself. Nakedly stated, it amounts to this, that a corporation which has appropriated water which the constitution has declared shall forever be devoted to a public use, may contract with A, B, and C to supply them in perpetuity with a given quantity of this water, and then, by assigning in turn to A, B, and C its rights under these contracts, confer upon A, B, and C a private right ·superior to and destructive of the public use. If this can be done with one it may be done with many, and water which has thus been appropriated for public rental, distribution, and sale may, by this legerdemain of the law, be transferred into private ownership and use. This may not be done.

The fundamental and all important proposition then is this, that a public service water company which is appropriating water under the constitution of 1879, for purposes of rental, distribution, and sale, cannot confer upon a consumer any preferential right to the use of any part of its water. Even before the adoption of the constitution of 1879 and its declaration therein contained (art. XIV, sec. 1), it was said by this court in *Price* v. *Riverside L. & I. Co.*, 56 Cal. 431: "Every corporation deriving its being from the act above cited, has impressed upon it a public trust, the duty of furnishing water, if water it has, to all those who come within the class or community for whose alleged benefit it has been created." In *McCrary* v. *Beaudry,* 67 Cal. 120, [7 Pac. 264], is contained the first statement of this court in construction of the constitutional provision: "Whenever water is appropriated for distribution and sale, the public has a right to use it, that is, each member of the community, by paying the rate fixed for supplying it, has a right to use a reasonable quantity of it, in a reasonable manner." And in the late case of *Hildreth* v. *Montecito Creek Water Co.*, 139 Cal. 22, [72 Pac. 395], it was said by Mr. Justice Shaw, speaking for the court in Bank, in defining the public use declared by the constitution: "In the case of a public use, the beneficiaries do not possess rights to the waters which are, in the ordinary sense, private property.

A public use 'must be for the general public, or some portion of it, and not a use by or for particular individuals, or for the benefit of certain estates.' (*McQuillen* v. *Hatton,* 42 Ohio St. 202.) 'The use and benefit must be in common, not to particular individuals or estates.' (Lewis on Eminent Domain, sec. 161; *Coster* v. *Tide Water Co.,* 18 N. J. Eq. 68; *Pocantico Co.* v. *Bird,* 130 N. Y. 259, [29 N. E. 246]; *Gilmer* v. *Lime Point,* 18 Cal. 251; *McFadden* v. *County of Los Angeles,* 74 Cal. 571, [16 Pac. 397].) The right of an individual to a public use of water is in the nature of a public right possessed by reason of his *status* as a person of the class for whose benefit the water is appropriated or dedicated. All who enter the class may demand the use of the water, regardless of whether they have previously enjoyed it or not." The principle receives universal recognition, says the supreme court of Indiana, in *State ex rel. Wood* v. *Consumers' Gas Trust Co.,* 157 Ind. 345, [61 N. E. 674, 55 L. R. A. 245]: "No statute has been deemed necessary to aid the courts in holding that, when a person or company undertakes to supply a demand which is affected by a public interest, it must supply all alike who are like situated, and not discriminate in favor of nor against any." (45 Cent. L. J., p. 278; *Haugen* v. *Albina L. & W. Co.,* 21 Or. 411, [14 L. R. A. 424, 28 Pac. 244]; *Olmstead* v. *Morris Aqueduct,* 47 N. J. L. 311; *Commonwealth* v. *Wilkes Barre Gas Co.,* 2 Kulp. (Pa.) 499; *Chicago & N. W. R. Co.* v. *People,* 56 Ill. 365, [8 Am. Rep. 690]; *Nebraska Telephone Co.* v. *State,* 55 Neb. 627, 634, [45 L. R. A. 113, 76 N. W. 171]; *Watauga Water Co.* v. *Wolfe,* 99 Tenn. 429, [63 Am. St. Rep. 841, 41 S. W. 1060]; *State* v. *Delaware L. & W. R. Co.,* 48 N. J. L. 55, [57 Am. Rep. 543, 2 Atl. 803].) All are equally entitled to share in the use of the water who pay, or offer to pay, the legal rate and to abide by the reasonable rules and regulations of the company. It does not follow that a water company may not make specific contracts with individual consumers which are within the purview of the constitution and within valid legislative enactments regulating the public use. This is precisely as decided by *Fresno Canal Co.* v. *Park,* 129 Cal. 437, [62 Pac. 87]. But, as decided in *Crow* v. *San Joaquin Irr. Co.,* 130 Cal. 309, [62 Pac. 562, 1058], immediately following the Park case, such a contract, even if violated by the consumer, could not operate to deprive him

of his constitutional right to the water furnished by the public service corporation upon tender to it of the legal rate. For the breach of the consumer's contract, the water company must seek other redress than that of depriving the consumer of his share of the supply. The language of this court in *Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716, [93 Pac. 858], must be construed in the light of the facts there presented. The court was there considering the claim of a water company to the right to collect rates in excess of those fixed by a contract made with its predecessor, its claim being in part founded on the theory that by a foreclosure sale it had acquired the water and distributing system free from that contract. The opinion, in the main, goes upon the theory that the water in control of the company was not subject to a public use, and upon that theory it was held that the contract to furnish water to Bachman's land attached the water-right to it as an appurtenance, with the right to receive water from the previous owner of the system and its successors at the contract rates. The company made the additional argument that the water was in fact devoted to public use, that if it could be thus attached to land as an appurtenance, the property dedicated to public use would be converted into private property, and that, as this could not be permitted, the contract was against public policy and void, so far as it attempted to create the appurtenance or fix rates. This argument is not fully stated in the opinion. In answer to the argument the court cited the case of *Fresno etc. Co.* v. *Park,* 129 Cal. 437, [62 Pac. 87], and declared that the constitutional provision regarding water devoted to public use did not prevent a water company from making a contract giving to a particular tract of land the right to receive water for permanent and continuous use for irrigation, subject to the condition that the public authorities could regulate and control the use. Such a contract disposing of water devoted to public use, of course would not technically attach it to the land as an appurtenance. It would do nothing more than bring the land within the territory to which the public use extended, and establish its *status* as land permanently entitled to share in the public use. It did not appear in that case that any public regulation had been made and the contract controlled the rights of the parties. It was therefore immaterial, so far as the right to collect the

rates in controversy in that case was concerned, whether the water-right was appurtenant to the land as private property, or whether the land was entitled to a part of the water as a sharer in the public use, where public rates had not been fixed and private contracts controlled. This is the essence of the decision and it does not conflict with *Hildreth* v. *Montecito Creek Water Co.,* 139 Cal. 22, [72 Pac. 395], or any other cases on the subject of public use.

The foregoing statement that a water company, or person in charge of water devoted to public use cannot confer a preferential right upon one consumer over another, is not to be understood as denying the right of such company or person in possession of a limited amount of water to devote that amount to the irrigation of a given area of land. We are not to be understood as saying that the company may not fix the limits of this territory, and lawfully agree to supply its waters, first, to the lands within that territory, and to supply to outsiders only such surplus as there may be after the needs of the original territory for which the water was procured are satisfied. This would not be in derogation of the public trust, but would be a mere regulation of use in the performance of the trust.

*Hunt* v. *Jones,* 149 Cal. 297, [86 Pac. 686], is not in conflict with the principle enunciated. A land company had acquired water for use upon its lands. It was in its nature a private appropriation. In selling the lands it sold with them, as appurtenant to them, a proportionate share of water as a private water-right. It was in effect the sale by a private landowner of land with water-rights appurtenant thereto, and his subsequent attempt to withhold the water. It involved no question of the rights of consumers in waters appropriated to public use.

It is, of course, a truism of the law that an act of the legislature conflicting with constitutional provision must fall. All of the acts of the legislature regulating or attempting to regulate the public use of waters so appropriated are subordinate to the provisions of the constitution and, to be valid, must be in harmony therewith. We have said, and undertaken to show, that a water company organized under the constitution of 1879, which has appropriated waters of the state for public rental, distribution, and sale, cannot give a preferential right

to one consumer over another. Permanent rights, in a limited sense, such consumers may acquire. That is to say, having once been supplied by the company, they are entitled to a continuation of such supply, unless their *quantum* shall be diminished by a shortage for which the water company is not responsible, or a shortage by reason of the increased demand of added consumers. In such cases the duty of the water company is to supply such water as it has, fairly apportioned between its consumers. If it be conceived that section 552 of the Civil Code is designed to confer upon any particular consumer any especial, permanent and preferential right above what is here stated, that effort, being plainly violative of the constitution, would be held void. The same declaration applies to the provision of the act entitled: "An act to regulate and control the sale, rental and distribution of appropriated waters in this state other than in any city, city and county, or town therein, and to secure the rights of way for the conveyance of such water to the place of use," approved March 12, 1889, and of the amendment to that act by the act approved March 2, 1897. (Stats. 1897, p. 49.)

In *Fresno Canal Co.* v. *Park*, 129 Cal. 437, [62 Pac. 87], it was held that, in the absence of a rate fixed by the supervisors, a rate agreed upon between the parties could be enforced. In *Crow* v. *San Joaquin etc. Canal Co.*, 130 Cal. 309, [62 Pac. 562], it was held that a consumer did not deprive himself of the right to take water under the rate established by law by reason of his refusal to pay under and in accordance with the terms of his contract. In this case there was no refusal upon the part of the appellant company to furnish water. Respondent was tendered the water—first at the rate fixed by law and second at the rate fixed by the Grace Elledge contract. But he refused to pay anything for the water, and insisted upon his right to take it and use it without charge. This right he did not have. The utmost for which he could contend was the right to the use of water (in consonance with the foregoing principles) upon tender of payment of the contract rate. The contract was continuous, its obligations concurrent. Respondent's conduct amounted to more than a default. It was an intentional breach and repudiation by which, whatever it may have been conceived they were, his rights under the contract came to an end. (Page on Contracts, secs. 1447, 1461;

*South Boulder R. C. Ditch Co.* v. *Marfell,* 15 Colo. 302, [25 Pac. 504]; *Green* v. *Covillaud,* 10 Cal. 317, [70 Am. Dec. 725].)

For the foregoing reasons, the judgment and order are reversed and the cause remanded.

Shaw, J., Angellotti, J., Sloss, J., Lorigan, J., and Melvin, J., concurred.