[Civ. No. 2171. Third Appellate District.—December 31, 1920.]

## THE MERCHANTS NATIONAL BANK OF SAN FRANCISCO (a Corporation), Respondent, v. D. W. CARMICHAEL, Appellant.

[1] ACCOUNT STATED—DEFINITION.—An account stated is an agreed balance of accounts; an account which has been examined and accepted by the parties; a writing which exhibits the state of the account between parties and the balance owing from one to the other, and when assented to, either expressly or impliedly, it becomes a new contract.

[2] ID.—CROSS-DEMANDS—SINGLE TRANSACTION. — To constitute an account stated, it is not necessary that there should be cross-demands between the parties, or that the acknowledgment that a certain sum is due from one party to the other should relate to more than a single debt or transaction.

[3] ID.—CONTRACT TO FURNISH WATER — CONSTRUCTION. — Where the owner of a tract of land, which he proposed to subdivide and sell, entered into an agreement with a water company by which the latter agreed for a certain sum per acre, the area to be determined by a subsequent survey, to execute to each purchaser a contract to furnish water perpetually to him at a fixed charge, the agreement reciting that the owner had paid a certain amount to the company of the sum agreed, a second agreement between the parties in which the company acknowledged to have received on the first contract a certain sum as part payment of the contract, and that the balance due was a certain amount, the owner acknowledging in writing the second contract to contain a correct statement of the amount paid and the amount still due and unpaid on the contract, constituted an account stated.

[4] ID.—ACKNOWLEDGMENT OF DEBT—SUFFICIENT BASIS FOR RECOVERY. Such second agreement, even if not an account stated but only a due-bill, or an acknowledgment of the debt, forms a sufficient basis for recovery if supported by a consideration.

[5] ID. — CONSIDERATION FOR STATED ACCOUNT — RIGHT OF ATTACK. — While the presumption that a written instrument was made for a consideration is a disputable one, it is not subject to be controverted in the case of a stated account, unless fraud, duress, mistake, or other grounds cognizable in equity for the avoidance of an instrument be pleaded or made an issue.

[6] WATER CORPORATION—FURNISHING WATER AT FIXED RATE—VALIDITY OF CONTRACT—PUBLIC POLICY.—A contract of a public service

---

1. Accounts stated, notes, 62 Am. Dec. 85; 136 Am. St. Rep. 37.

water company to furnish water at a fixed sum and at a fixed rate is not invalid as against public policy unless the proper public authority interferes, but is valid and enforceable between the parties until the public authorities find cause to abrogate or modify it.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. E. McLaughlin and R. L. Shinn for Appellant.

Gavin McNab, Nat Schmulowitz and H. S. Derby for Respondent.

HART, J.—This is the second appeal in this cause. The first trial of the case resulted in a judgment for the defendant, from which judgment the plaintiff appealed, and the judgment was reversed by the supreme court, the decision being rendered and filed on June 18, 1918. (See 178 Cal. 446, [173 Pac. 999].)

On the former appeal, as on this, the principal question submitted for determination was whether a certain written instrument which was and is made a part of the complaint and which was identified evidentially as Exhibit "B" does or does not constitute an account stated or evidence of such an account, the plaintiff's action being entirely based upon said instrument, as to which the theory of the complaint was that it was a stated account between defendant and the American Cañon Water Company (subsequently transferred to plaintiff), whereby the former acknowledged an indebtedness to the said water company in the sum of $4,126.65, being a settlement of previous contracts or transactions between them.

The pleadings are as they were originally settled and upon which both the first and the present trials were had.

The complaint sets out in sufficient detail the transactions culminating in the alleged stated account.

The answer denies the making of a stated account, and then sets up some matters of affirmative defense, the general nature of which it will be the more convenient and just as orderly to refer to hereafter.

In the first trial, the trial court "made findings to the effect that no account had been stated by the said parties and that no sum was found due to the water company from the defendant, Carmichael, and that he never agreed to pay said sum of money," and judgment was accordingly entered.

At the last trial, resulting in the judgment from which this appeal is prosecuted, the court, presumably acting largely upon its understanding of the purport of the opinion of the supreme court in the case on the former appeal, and conceiving, no doubt, that the facts brought out by the evidence were substantially the same as those established at the former or first trial of the action, found that a stated account had been made and agreed to by and between Carmichael and the water company. As before suggested, however, it is here contended by the appellant that the finding that an account stated was made between Carmichael and the water company derives no support from the evidence. It is further contended that it is not squarely held by the supreme court in its opinion in disposing of the former appeal that the instrument upon which the action is founded constitutes an account stated. It is further urged that there was a failure of consideration.

The respondent contends that the facts brought out at both trials of the case are substantially the same, and, therefore, invokes the doctrine of the "law of the case," claiming that the decision on the former appeal must be accepted as the law applicable hereto as to all the questions involved in the controversy adjudicated by said decision; that the supreme court distinctly held, in its said decision, that the instrument pleaded and entirely relied upon by the plaintiff was an account stated and that said account was made and agreed to by Carmichael and the water company.

The general facts established at the first trial are clearly stated and the law applicable thereto plainly, unambiguously, and definitely expounded in the opinion of Mr. Justice Shaw, voicing the views of the court on the former appeal, as follows:

"Carmichael was the owner of a tract of land containing 1,126.64 acres, more or less, which he proposed to

subdivide and sell to purchasers in small tracts. He desired to make some arrangement whereby water could be furnished for irrigation and domestic use on said tracts. With this in view, he and said water company, on December 16, 1912, entered into an agreement whereby the water company agreed that for a sum equal to ten dollars an acre for each acre of Carmichael's land, the area to be determined by a subsequent survey, which sum Carmichael thereby agreed to pay to said water company, it would execute to each of the expected buyers of tracts of such land a contract to furnish the tract bought by them with water perpetually, at the yearly charge of four dollars per acre for irrigation and one dollar a month for domestic use, the said right to be appurtenant to such tract so bought. The agreement recited that Carmichael had paid to the water company $7,000 of the sum agreed to be paid by him as aforesaid. The second agreement was as follows:

" 'Sacramento, Calif. December 16, 1912.

" 'This is to acknowledge that American Cañon Water Company has this day received from D. W. Carmichael on account of contract of even date herewith, for the furnishing of water on 1,126.64 acres of land on the Haggin Grant, the sum of $7,000.00, gold coin of the United States of America, as part payment of the said contract. That the balance due on said contract is the sum of $4,126.65.

" 'AMERICAN CAÑON WATER COMPANY,

" 'By O. G. HOPKINS, Attorney.

" 'I hereby acknowledge the foregoing to be a correct statement of the amount paid and the amount still due and unpaid on said contract.

" 'D. W. CARMICHAEL.'

[1] "An account stated is defined as 'an agreed balance of accounts; an account which has been examined and accepted by the parties.' [2] It is not necessary that there should be cross-demands between the parties, or that the defendant's acknowledgment that a certain sum is due from him to the plaintiff should relate to more than a single debt or transaction. . (*Baird* v. *Crank,* 98 Cal. 297, [33 Pac. 63].)

" 'An account stated is a document—a writing—which exhibits the state of the account between parties and the

balance owing from one to the other, and when assented to, either expressly or impliedly, it becomes a new contract.' (*Coffee* v. *Williams*, 103 Cal. 556, [37 Pac. 504]; *Gardner* v. *Watson*, 170 Cal. 574, [150 Pac. 994].)

"The first agreement created an indebtedness from Carmichael to the water company. On its face it showed that the amount of the original debt was $11,266.40, with a credit thereon of $7,000, which would leave a balance of $4,266.40.

"The second agreement expressly states that the balance due on the original debt is $4,126.65. The evidence shows that the first contract is dated November 30, 1912, and that it was acknowledged on that day by the executing officers of the water company, that some time after that date the second agreement was prepared, and that both were finally executed by delivery on the same day, December 16, 1912. It is conceded that the second refers to the first. The recital in the second that the first is 'of even date' with the second was a clerical error. The difference in the balance shown in the respective documents would appear to have been the result of error, or of payments made after the partial execution of the first. It is apparent from the terms of the second that its delivery, in contemplation of law at least, succeeded the delivery of the first. It assumes the pre-existence of the first agreement as a subsidiary contract. It does not itself create the original obligation, as claimed by respondent; it refers to the first agreement as the foundation thereof. The authorities cited by respondent to the effect that 'an account stated cannot be made to create a liability when none existed before' are, therefore, not in point.

"Nor does the second agreement constitute a mere calculation of the amount due as fixed by the terms of the first agreement, so as to bring it within the rule declared in cases like *Jasper* v. *Lamkin*, 162 Ala. 388, [136 Am. St. Rep. 34, 24 L. R. A. (N. S.) 1237, 50 South. 337], where it was held that a statement of the amount due for principal and interest on promissory notes, made by the holder thereof and assented to as correct by the maker, is not an account stated. Here the amount to become due was not fixed with certainty by the first agreement. It was made to depend on the number of acres in the tract of land,

which was to be ascertained by a survey. The second agreement obviated the necessity for a survey, or was the result thereof. In either case it differentiates this case from those referred to.''

[3] It seems to us that, after reading the above language, no one could doubt that it is thereby distinctly held that the instrument sued on is an account stated. The very fact that the court points out the distinction between this case, as it was presented to it, and the case of *Jasper* v. *Lamkin,* between which and this counsel for the appellant sought on the former appeal to establish an analogy if not a pronounced similarity, is itself sufficient to indicate that in its opinion the court intended to hold, and does squarely hold, that the action was on a stated account. Note the following language of the court in that connection: ''Here the amount to become due was not fixed with certainty by the first agreement. It was made to depend on the number of acres in the tract of land, which was to be ascertained by a survey. The second agreement obviated the necessity for a survey, or was the result thereof. In either case, it differentiates this case from those referred to.'' Thus, it will be observed, that, in referring to the instrument sued on and the circumstances bringing it into existence, the court, by its own language, describes an account stated—that is, an agreed balance due on an account subsisting between the parties. The court, however, followed the above-quoted language from its opinion with this observation: ''But even if it could be said that the instrument cannot be sued on as an account stated, the plaintiff would still be entitled to recover. The complaint alleges its execution, a copy of it is made a part of the complaint, and there are allegations that defendant agreed to pay the amount stated therein, that payment has been demanded of him, and that he has failed to pay the same or any part thereof. The instrument is an acknowledgment of a debt due, the law implies a promise to pay the same, and it is a good foundation for an action, being in effect a due-bill.'' It is from this particular language that counsel for appellant here educe the proposition they so vigorously press upon us that the supreme court did not hold, in its decision disposing of the former appeal, that the instrument represents an account stated. We do

not so understand the language just quoted. The entire opinion must be read as a whole to ascertain the precise conclusion arrived at and announced. Viewing the language referred to alone and by itself or without reference to the preceding parts of the opinion, it might be capable of the construction which counsel ascribe to it; but when it is considered in the light of the language preceding it, the observations of the court upon which counsel appear to place sole reliance to support their view of the purport of the decision clearly enough justify the conclusion that what the court intended to and in effect does say is this: That, while the instrument sued on is an account stated, the defendant, under the allegations of the complaint, could not in any event prevail, since the instrument, whatever it may be designated, technically, involves the acknowledgment by the defendant of a debt due the plaintiff. It will be noticed that the court, after declaring in effect that the instrument is an account stated, uses these significant words in introducing the proposition last stated, *"Even if it could be said,"* etc., which clearly shows, as we have in different language stated, that what the writer of the opinion had in mind and all he intended to say was that even if the court was required to adopt counsel's theory of the nature of the instrument sued on—a theory which the preceding language of the opinion plainly shows that it did not adopt—still the plaintiff was entitled to recover, inasmuch as the instrument involved the acknowledgment of a debt, etc.

If, then, it be true that, as counsel for respondent contend is the fact, the evidence received at the two trials of the action is substantially the same in all vital particulars, it of necessity follows that the doctrine of the law of the case applies, and per consequence the instrument sued on must be held to involve a stated account; and this would be so even if it were necessary to concede that the supreme court was in error in holding that said instrument involved an account stated. (See 2 Hayne on New Trial and Appeal, p. 1658; *Dewey* v. *Gray,* 2 Cal. 374; *Clary* v. *Hoagland,* 6 Cal. 685; *Gunter* v. *Laffan,* 7 Cal. 588; *Cordier* v. *Schloss,* 18 Cal. 576; *Phelan* v. *San Francisco,* 20 Cal. 39; *Haynes* v. *Meek,* 20 Cal. 288; *Davidson* v. *Dallas,* 15 Cal. 75; *Ritter* v. *Stevenson,* 11 Cal. 27;

*Learned* v. *Castle*, 78 Cal. 454, [18 Pac. 872, 21 Pac. 11]; *Burton* v. *Burton*, 79 Cal. 490, [21 Pac. 847]; *Emeric* v. *Alvarado*, 90 Cal. 444, [27 Pac. 356]; *Jaffe* v. *Skae*, 48 Cal. 540; *Sharpstein* v. *Friedlander*, 63 Cal. 78; *Blakenship* v. *Whaley*, 142 Cal. 566, [76 Pac. 235]; *Franz* v. *Mendonca*, 146 Cal. 640, [80 Pac. 1078]; *Lambert* v. *Bates*, 148 Cal. 146, [82 Pac. 767]; *Ellis* v. *Witmer*, 148 Cal. 528, [83 Pac. 800]; *Emerson* v. *Yosemite*, 149 Cal. 50, [15 Pac. 122]; *Reeve* v. *Colusa*, 151 Cal. 29, [91 Pac. 802].)

In *Brett* v. *S. H. Frank & Co.*, 162 Cal. 735, 739, [124 Pac. 437], the court said: "It has been sometimes said that the doctrine of the law of the case is invoked only when the former decision as to the law is erroneous; that its application presupposes a previous error by which the court is bound. It does, indeed, go that far, if it becomes necessary to do so. But the last decision would be the same in a case where the first decision was not erroneous. The doctrine means simply this: that the court having once decided the law, and the cause having gone back to the lower court for further proceedings in accordance with the law as thus established, and the parties and the lower court having acted in reliance upon that law, this court will not, upon a second appeal, again enter into a consideration of the question, but, if the facts and circumstances are substantially the same, will treat it as settled law, regardless of its accuracy. (See *Allen* v. *Bryant*, 155 Cal. 258, [100 Pac. 704].)"

We are, however, not to be understood as intimating the opinion that the supreme court was in error in holding that the instrument in question is an account stated. To the contrary, we think the court was right in so holding, and should ourselves say, upon further consideration of the case (this court originally held that the instrument sued on here was not an account stated—see 26 Cal. App. Dec. 302), and, having again examined the documentary and oral evidence taken at the former trial, that it was thus clearly shown in said trial that the instrument was the culmination of a settlement of prior differences existing between the parties resulting from business transactions between them, and that it was agreed, and so stated in the writing, that a balance amounting to the sum of $4,126.65 remained due to plaintiff from defendant

after said settlement was had. In other words, said evidence disclosed that defendant was indebted to plaintiff in a large sum of money; that they had a settlement of the account which resulted in the payment by defendant to plaintiff of the larger portion of such indebtedness, and that the parties then and there agreed and the defendant acknowledged in writing that there was a balance due from him to plaintiff, as a result of the transactions as to which the settlement was had, in the sum of $4,126.65. This latter agreement and acknowledgment clearly amounted to an account stated within the definition of such a transaction as given by Mr. Justice Shaw in his opinion deciding the case.

[4] To the above may be suggested an added consideration, viz.: That the supreme court, in its decision, distinctly holds, as we have seen, that, even if the instrument sued on could properly be held to be nothing more than a due-bill or the acknowledgment of a debt, the plaintiff, under the averments of its complaint and the evidence disclosed by the former record then before the court, would be entitled to recover. Indeed, counsel for the defendant themselves, while not admitting that the instrument is a stated account, expressly concede that, if the instrument were supported by a consideration, it would form a sufficient basis for a recovery. This is the precise language of their brief: "We concede that this instrument [referring to the instrument sued on] admits an indebtedness. We concede that in a proper action this document could be made the basis of an action at law. We concede that if there was any consideration for this due-bill, the defendant in this case cannot hope to escape."

Now, as to the evidence in the record before us. As above stated, we have examined the evidence taken at the former trial and compared it with the evidence received at the second trial, and we have not been able from such examination and comparison to perceive any substantial difference in the evidence of the two trials. The defendant went into the details of the several transactions leading to the execution of the instrument in question a little more elaborately at the second than he did at the first trial, but we have found absolutely nothing in his later testimony which tended to show that there was not,

after the settlement referred to, an agreed balance due from defendant to plaintiff in the sum specified in the stated account upon which the action is based.

There is, however, this additional testimony given by defendant (responding to allegations of the answer to that effect) that, at the time of the settlement and the balance due from him was struck, the water company agreed to accept certain notes of a corporation designated and known as the ''California Corporation'' of the aggregate equal value to said balance in full payment thereof—that is, if said notes were found by the company upon investigation to be valid. Upon this testimony the argument is predicated that the instrument sued on was intended as a mere memorandum or due-bill of the balance due which was to be paid by the delivery to the company of said notes. But, assuming that this evidence was not incompetent because its effect would be to insert a provision in the writing that it does not contain, and further assuming that an agreement such as the defendant said was had as to the mode of payment of the balance would take from the instrument sued on the characteristic of a stated account, there is, in our opinion, a conflict in the testimony upon that proposition. Mr. Hopkins, an attorney, acting as such for the water company in all the transactions involved herein between the water company and the defendant (and, so far as the evidence in the record shows, the only person who was present and acted for the company in the settlement), testified at the last trial that he had some recollection of the defendant on some occasion proposing to him, as the agent of the water company, to pay the balance which it was agreed was due the plaintiff from the defendant with the notes of the California Corporation, but that he knew that if he said anything to defendant about the proposition ''it was only to the effect that I had no authority to accept the notes; I don't recall any conversation on that date [date of the execution of the instrument sued on] on those notes.'' It will be seen that, while Mr. Hopkins did not directly or specifically testify that no such agreement was had relative to the payment of the balance of the debt with said notes, he in substance and effect did so testify. It was, at any rate,

sufficient to produce a conflict in the evidence upon the proposition.

[5] Counsel, however, vigorously assert that the evidence shows that there was no consideration for the account, and also a failure of consideration for the preceding agreements.

A written instrument imports a consideration for its execution—that is to say, a written instrument carries with it the presumption that it was made for a consideration. (Civ. Code, sec. 1614.) And, while, as a general rule, such presumption is a disputable one and may be controverted by proper evidence, it has been held that it is not subject to be disputed, in the case of ,a stated account, unless fraud, duress, mistake, or other grounds cognizable in equity for the avoidance of an instrument be pleaded or made an issue. "It is not open to a defendant," says the supreme court in *Gardner* v. *Watson,* 170 Cal. 570, 576, 577, [150 Pac. 994], "to attempt to defeat the legal effect of such a contract by showing a lack of consideration in any other way (than that it was procured through fraud, etc.). Thus, it is not open to a defendant in such a case merely to show that the account stated was based upon a disputed claim of the plaintiff's, which claim subsequently proved to be invalid. Nor would it be open to a defendant to show that the amount justly due was very much less than the amount named in the account stated. All such evidence going to a total or partial lack of consideration is forever debarred by the convention and agreement of the parties, for this is of the very essence of an account stated."

There is no claim here that the account stated was procured through fraud or duress practiced by the plaintiff or the mutual mistake of the parties or otherwise. Therefore, unless it was shown that there was, either in fact or in law, a total failure of consideration for the transactions or agreements out of which the stated account arose (and it was not so shown), the question of consideration is wholly foreign to the case.

But, if it were important here to show that the record affirmatively discloses that the writing sued on and the agreements from which it resulted were supported by a consideration, there would be no difficulty in doing so, or

in showing that there was not a failure of consideration. Indeed, from the defendant's own testimony, it clearly appears that he was indebted to the plaintiff in a large sum of money, that he paid in cash the larger portion thereof and at the same time executed a written acknowledgment that there was still due from him to the water company the sum of $4,126.65. His testimony that the water company had agreed to accept the notes of the California Corporation as in payment of said sum is pregnant with an admission that he still owed that amount to the company and that it was a debt incurred for a consideration. If there was no consideration for the instrument in question, it was a *nudum pactum* and not enforceable; he was under no obligation to pay it; then why offer to pay or express a willingness to pay, as he does in his answer, in the said notes or at all? Moreover, the transactions, of which the stated account was the outgrowth, had been going on for some years and involved several written agreements, one of which, in addition to the one to which the instrument sued on expressly refers, involved a lien given by him to the water company on certain of his lands, embraced in "Carmichael Colony No. 1," and other property, to secure the payment of money for water delivered and to be delivered to defendant's said lands, and in the negotiations culminating in the execution of the instrument evidencing the account stated, it was insisted by the defendant that said lien should be released and it was released. There was also a controversy between the parties relative to unpaid water claims due the company for supplying water to "Carmichael Colony No. 1." The defendant said that, in securing an adjustment of all their previous transactions and in securing an agreement for water for Carmichael Colony No. 2, there was considerable "bickering" between them, he trying to get what he wanted for as little money as possible, while the water company was trying to get out of him all that it could. Finally, an agreement was reached whereby the lien of Colony No. 1 was released and the agreement to supply Colony No. 2 with water and the instrument sued on were executed. It is not necessary further to go over the evidence herein, for we think we have stated enough of it to show that, as stated, the record discloses an abundance of evidence affirmatively

showing that the stated account was and is supported by a consideration.

There are several other special matters of defense pleaded in the answer, but as to two of them there is no evidence in the record. These are: 1. That the property and water rights of the water company were, in the year 1913, under a trust deed, covering all said property and water rights, executed by the water company to the First Federal Trust Company, to secure a bonded indebtedness in the aggregate sum of $300,000, sold by said First Federal Trust Company, thereby divesting the water company of all right, title, and interest in and to said property and water rights and, therefore, rendering the agreement of the water company to furnish Colony No. 2 with water impossible of performance; 2. That there was no promise by defendant to pay for water at rates in excess of four dollars per acre per annum for irrigation purposes and one dollar per month for domestic purposes, such rates being those fixed in agreements between the water company and water users owning lands adjoining those of the defendant. As to the latter proposition, it is to be added that it is at variance with the written agreement made at the time the stated account was executed and expressly referred to by the latter instrument.

[6] There is another point, however, which counsel for the appellant vigorously press upon us, and it is this: That the agreement to furnish water to defendant at rates fixed by the agreement of the parties themselves is against public policy, and, therefore, void, inasmuch as the water company is a public service corporation, engaged in supplying a public use, which is subject to regulation by the public authorities vested by law with that power. This question was considered and disposed of adversely to the position of counsel on the first appeal by the supreme court. The court in its decision said: "Respondent suggests that the first agreement was an attempt to bind a public water company by a contract to furnish water for a fixed sum and at a fixed rate, and intimates that such a contract is against public policy and invalid. But such a contract is valid unless the proper public authority interferes. Unless the public authorities find cause to abrogate or modify such contract, and until they do so, it is valid and enforceable

between the parties''; citing *Southern Pac. Co.* v. *Spring Valley Water Co.,* 173 Cal. 291, 297, [L. R. A. 1917E, 680, 159 Pac. 865].

In the last-named case, dealing with a contract whereby the water company agreed to deliver water into certain tanks of the appellants (Railroad Co. et al.) continuously and for an indefinite period of time and without further charge than that agreed to in said instrument, the court said, replying to the contention that said contract was against public policy and for that reason invalid: ''We perceive no valid reason for holding the contract void because opposed to public policy. It is not claimed that it was not freely made, or that it was procured by fraud or undue influence. There is nothing inherently wrong in such a contract to give water service upon payment in advance. . . . Where the rates for water devoted to public use have not been fixed by public authority, the person in charge of the use and the consumer may freely contract regarding the price of service and the manner of payment, and such contracts will be deemed valid by the courts and may be enforced by any appropriate mode. (*Fresno Canal etc. Co.* v. *Park,* 129 Cal. 437, [62 Pac. 87]; *Stanislaus W. Co.* v. *Bachman,* 152 Cal. 725, 730, [15 L. R. A. (N. S.) 359, 93 Pac. 858]; *Leavitt* v. *Lassen Irr. Co.,* 157 Cal. 82, 90, [29 L. R. A. (N. S.) 213, 106 Pac. 404].)''

There is sufficient in the evidence to warrant the conclusion that the American Cañon Company was a public service corporation, engaged in supplying a public use, and was, therefore, subject, in the matter of its rates for water, and as to the manner in which such use should be administered, to regulation by public authority, but the record is absolutely barren of evidence tending to indicate or show that the public authorities had ever fixed the rates for the supplying of water by said company, or otherwise done anything or taken any step which would have the effect of interfering with or abrogating the agreement between the parties to this action.

We cannot see wherein the cases cited by the appellant are in point here. In *Crow* v. *San Joaquin etc. Irr. Co.,* 130 Cal. 313, [62 Pac. 562], so cited, the action was to recover damages for the refusal of the water company,

which was engaged in supplying a public use, to furnish the plaintiff water for the irrigation season of a certain year. The water company undertook to defend against the action on the ground that the plaintiff had failed and refused to pay his water bills to said company for water furnished him in previous years, claiming that the contract under which it supplied the plaintiff water during said years had annexed to it the company's regulations, to which he subscribed, whereby it was made a condition precedent to the right to receive water from the company that all dues and claims for previous supplies should be paid. The court held that the use of water in this state is a public use (Const., art. XIV, sec. 1), and that to carry out that provision of the constitution the legislature had passed an act (Stats. 1885, p. 95), making it the duty of the company administering such use, "upon demand therefor and tender of the established water rates, to sell, rent, or distribute such water to the inhabitants" within the territory of such water supply "at the established rates *regulated and fixed therefor,* as in this act provided, whether so fixed by the board of supervisors or otherwise," etc. The court in its opinion further said that if the regulations of the company referred to "could be considered as . . . binding upon the user of water for all future time, it would be without consideration; for it was the duty of the defendant company to furnish the plaintiff with water whether he agreed to the regulations or not."

Of course, it would be doubted by no one that if this was a case where the company had refused to supply the defendant with water for any reason, the latter could compel the company to supply him with water at rates fixed either by the rate-fixing power or, in the absence of rates having thus been fixed, by the company itself upon a reasonable basis or a basis not prohibitive, even though the defendant were in arrears to the company in payment for past service. As shown, the latter case is the situation here, so far as we are advised by this record, and there is no claim that the rates agreed upon between the parties or exacted by the plaintiff are exorbitant or so unreasonably high as to be prohibitive.

Among the other comparatively recent cases referred to by appellant on this question are: *Lowe* v. *Yolo Co. etc.*

*Power Co.*, 157 Cal. 503, [108 Pac. 297]; *Lowe* v. *Yolo Co. etc. Water Co.*, 8 Cal. App. 169, [96 Pac. 379]; *Leavitt* v. *Lassen Irr. Co.*, 157 Cal. 82, [29 L. R. A. (N. S.) 213, 106 Pac. 404], and many other earlier cases, in none of which have we been able to discern anything inconsistent with the view that a private contract between a water company and a water user for water in cases where the public authorities have not established the rates which the company may charge for supplying water to the public is not against public policy and void.

We have found no reason for disturbing the judgment, and it is, accordingly, affirmed.

Prewett, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 28, 1921.

All the Justices ·concurred.