[Civ. No. 4740. Third Appellate District.—January 23, 1933.]

SAMUEL B. McINTYRE et al., Respondents, v. CONSOLI-DATED WATER COMPANY (a Corporation) et al., Appellants.

Charles R. Stead, City Attorney, and Allard & Stead for Appellants.

Nichols, Cooper & Hickson for Respondents.

PLUMMER, J.—In this action the plaintiffs, numbering some sixty persons, are asking for declaratory relief for the construction of a contract, etc., under section 1060 of the Code of Civil Procedure. From the judgment entered in the action awarding the relief prayed for by the plaintiffs, the defendants appeal.

This case was before the Supreme Court upon an appeal from a judgment sustaining a general demurrer interposed by the defendants. The opinion reversing the judgment of the lower court is reported in 205 Cal. 231 [270 Pac. 444], to which reference is hereby made for a more complete statement of the facts than is necessary to be set forth herein. The case, as referred to, decided upon demurrer by the Supreme Court, had to do with the law involved in the action, and upon this appeal, an examination of the record shows that the findings of the trial court are in accordance with the law as laid down by the Supreme Court. The findings are not attacked as being unsupported by the evidence.

The defendants upon this appeal urge: 1. That the contract of March 15, 1900, in so far as it affected waters dedicated to a public use, is invalid. 2. That the contract of March 15, 1900, was annulled in the manner therein provided. 3. That the judgment entered created a new contract, etc. 4. That the provisions of the contract were erroneously extended to persons not parties thereto.

The findings of the court show that on or about the fourteenth day of September, 1887, one Fred J. Smith and William Everett entered into a certain written agreement,

by the terms of which Smith agreed to sell and Everett agreed to purchase a certain quantity of water that should be produced by Smith on lot 32 of Loop and Meserve tract, Rancho San Jose, county of Los Angeles. Deeds were executed thereafter, conveying title to the water in pursuance of the contract or agreement just referred to. The water was to be delivered through pipes to certain lots in a subdivision belonging to Everett. These lots were subsequently conveyed to the plaintiffs, together with water rights apportioning to each purchaser a certain quantity of water. In pursuance of the agreement between Smith and Everett and the deeds of conveyance, Smith developed water on lot 32, which water, by means of pipes, was thereafter conveyed to the lots belonging to the plaintiffs in this action. Thereafter, lot 32 and the waters developed thereon, and to be developed thereon, were, by mesne conveyances, transferred to the defendant, Consolidated Water Company, and by the Consolidated Water Company to the city of Pomona. In all of the transfers a reservation was made of the water and water rights conveyed and belonging to the plaintiffs and their grantors in this action.

The record shows that from 1887 until 1900 water was supplied as originally covenanted and agreed upon, and that after some misunderstanding or dispute had arisen as to the rights of the respective parties, an agreement was entered into on March 15, 1900, under the terms of which water was supplied by the Consolidated Water Company to the plaintiffs for the period of about twenty-six years. In 1926 the Consolidated Water Company conveyed all its interest in the waters produced, and being produced from said lot 32. Prior to the conveyance the Consolidated Water Company gave notice to the plaintiffs of rescission of the contract, and after the conveyance to the City of Pomona this notice of rescission was affirmed. After the conveyance passing between the Consolidated Water Company and the City of Pomona, the City of Pomona refused to deliver water to the plaintiffs, except at an increased cost, which the plaintiffs were required to pay, and the judgment in this action fixes the amount thereof and adjudges that the plaintiffs are respectively entitled to a return of the excess charges paid by them, fixing the amount for each plaintiff.

The contract entered into between the plaintiffs and the Consolidated Water Company on the fifteenth day of March, 1900, set forth, among other things, that the plaintiffs, being the parties of the second part to said action, owned certain water rights and privileges and certain wells on lot 32 of the Loop and Meserve tract in the City of Pomona, under various deeds, and that the Consolidated Water Company owned certain rights therein, through mesne conveyances, and that for the purposes of settling their differences, it was agreed that the Consolidated Water Company would furnish and deliver, by pumping or other means, to each of the parties of the second part, from a well on said lot 32, or from other sources, water for domestic use, in quantities desired, and to which they were entitled under their respective deeds, the parties of the second part, the plaintiffs herein, to pay for said water at the rate of eight cents per thousand gallons, up to the quantity to which each party was entitled. Any water furnished in excess of such quantity was to be paid for at the rates established by the municipal authorities of the City of Pomona.

The agreement further provided for the cancellation or annulment thereof, by giving notice thereof. Upon annulment, the plaintiffs were to be restored to the same rights and privileges held by them regarding the water rights about which the parties were contracting. The agreement further provided for the installation of meters, the measuring of water, and other incidentals not material in this action.

During the time the parties were observing the provisions of the deeds and contracts to which we have referred, additional wells were sunk upon said lot 32, and the well producing water at the time of the trial of this action was sunk on said lot at about nine feet distant from the well in existence at the date of the execution of the contract being considered. The old pipe-line appears to have been allowed to fall into disuse; the old well was allowed to fill up, several hundred feet of the casing being removed, and the top of the well being covered over with concrete.

The first point for reversal made by the appellants that the contract is invalid in so far as it related to waters dedicated to a public use, appears to be entirely without foundation. A reading of the findings disclosed beyond

question that it relates only to water and water rights belonging to the plaintiff in this action, in which the appellants have no ownership whatever, and to which none of the grantors of the appellants had any ownership after the title passed from Fred J. Smith, and ownership therein was transferred to William Everett, and through him down to the plaintiffs. That the Consolidated Water Company may have developed more water on lot 32 than was conveyed to the plaintiffs in this action, and devoted such water to public uses, does not lessen the ownership of the plaintiffs. The facts in this case do not present the question of whether a corporation engaged in the distributing of water for public purposes may enter into a contract to furnish one consumer water at a lower rate than is furnished to other consumers. In the instant case the Consolidated Water Company and the City of Pomona bought the water rights appurtenant to lot 32, remaining and existing after, over and above the water rights theretofore vested in and belonging to the plaintiffs. In other words, the plaintiffs are the owners of a certain quantity of the water produced on lot 32, and the appellants in this action are the owners of the remainder thereof.

When considered from its strict legal aspect, the case at bar does not present a sale of water at all. It is a case where certain waters have been sold, and the contract in .this case obligated the Consolidated Water Company to furnish the water upon being paid a certain sum of money per thousand gallons; that is, the Consolidated Water Company was simply to furnish water owned by the plaintiffs. That part of the waters furnished from a common source may be privately owned, and the remainder thereof devoted to a public service, is supported by the following cases: *Del Mar Water etc. Co.* v. *Eshleman,* 167 Cal. 666 [140 Pac. 591, 948]; *Williamson* v. *Railroad Com.,* 193 Cal. 22 [222 Pac. 803]; *Leavitt* v. *Lassen Irr. Co.,* 157 Cal. 82 [106 Pac. 404, 29 L. R. A. (N. S.) 213]. See, also, *McIntyre* v. *Consolidated Water Co.,* 205 Cal. 231 [270 Pac. 444], where the Supreme Court, when this case was before it upon appeal, said: "The mere fact that the Water Company was a public utility at the time the contract was made, in no manner affected the plaintiffs' rights to their interest in the water and distributing system." In the

opinion just referred to the Supreme Court also held that the contention of the contract being invalid, as a violation of article XIV of the Constitution, was without merit. No preferential rights being given under the contract, no violation of any portion of the Constitution is made to appear upon this appeal. As we have said, the contract provided for payment for services, and was in no sense a contract for the sale of water. None of the cases relied upon by the appellants touch the real issues here involved, and need not be reviewed.

The case of *Hudson* v. *Ukiah Water & Imp. Co.*, 177 Cal. 498 [171 Pac. 93], strongly relied upon by the appellants, may be mentioned. The facts, however, presented in that case are so dissimilar from those presented in the case at bar that it is not here controlling. In the Hudson case an attempt was made to compel the delivery of more water than had been sold or agreed to be furnished. Nothing of the kind is before us in this action.

The remainder of the appellants' assignments of error may be considered together.

The record discloses that the appellants made no offer whatever to restore the plaintiffs to their rights and privileges, as provided for in the contract. Notice was simply given of cancellation, without anything further. To hold that this effected a cancellation of the contract and relieved the appellants from their obligations thereunder, while at the same time holding possession of the property agreed by the contract to be restored to the possession of the plaintiffs, would be inequitable and in violation of every principle of right dealing. The mere fact that the Consolidated Water Company, in carrying out its portion of the agreement, sunk the well now furnishing water on lot 32, at a distance of about nine feet from the old well, and discontinued the use of the old well, does not change the ownership of the water, nor does it furnish a basis for the appellants in this action to effectuate a cancellation, simply by serving a written notice. We think the trial court properly held that the action of the appellants was not in accordance with the requirements of the contract, and did not work a cancellation thereof.

Again, if the appellants have placed themselves in a position where they cannot restore, it should be held to be their loss and not the loss of the plaintiffs, who are not responsible for such actions. As said by the Supreme Court when this case was before it upon a former appeal: "The law provides a simple and just means by which a public utility may acquire the private property of others. The cost of distributing plaintiffs' waters to their lands was definitely fixed by contract, and to raise the rate without their consent would impair the obligation of a contract, and so far as the increase inured to the benefit of the public use by reason thereof, it would be the taking of private property for public use without compensation." We do not deem it necessary to cite authorities in support of what we have set forth. The statement of the equitable principles involved is sufficient, and the trial court correctly followed them in its decision.

The judgment of the trial court is affirmed.

Thompson (R. L.), J., and Pullen, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 24, 1933.